### 2800. SOUTHERN LIFE INSURANCE CO. *v.* HILL.

The law involved in this case is well settled, and, as applied to the undisputed evidence, demands a verdict for the defendant.

DECIDED FEBRUARY 15,—REHEARING DENIED FEBRUARY 22, 1911.

Action on life-insurance policy; from city court of Americus— Judge Crisp. May 11, 1910.

*E. A. Hawkins, Y. A. Wright, Moore & Branch,* for plaintiff in error.

*H. B. Simmons, Shipp & Sheppard, R. L. Maynard,* contra.

HILL, C. J.   Allen Hill sued the Southern Life Insurance Company on four certificates or policies on the life of his mother, Pauline A. Hill, in which he was named as beneficiary.. A verdict was rendered in his favor, and the defendant's motion for a new trial was overruled.   The company set up three defenses: (1) that the policies were never really and in fact issued by the company; that they got out of its possession through a mistake by one of its clerks before the application for the policy had been passed upon or approved by the company's secretary and treasurer, whose duty it was to pass upon and approve such applications, and thereupon to have the policies issued; (2) that the policies were procured by misrepresentations in the application, material to the risk, and by concealment of material facts as to the health of the applicant; (3) that by their terms the policies were not to become binding contracts upon the company until delivered to the insured while in good health, and that when they were delivered to the beneficiary, the insured was not in good health, which fact was known both to the insured and the beneficiary, and not known to the company.

The evidence applicable to the issues may be briefly stated as follows: The plaintiff, who was the sole beneficiary in the policies on his mother's life, was himself an insurance agent.   At his earnest and persistent requests the local agent of the defendant company procured from his mother the application for the policies.   He represented to this local agent that his mother was in good health and was an insurable risk, and that he desired to procure on her life as many policies of insurance as the company would issue.   On May 28, 1909, the local agent procured from the insured the application for the policies.   In this application it was stated, among other things, that the applicant had never been afflicted with any serious illness, had never suffered from any tumor or ulcer, and had never been refused any insurance in other companies.   The representations in the application were expressly warranted to be true by the applicant.   This application was by the local agent submitted to the company's local medical advisor, whose duty it was to give his opinion as to the insurable character of the applicant.   This local medical advisor endorsed upon the application a statement that he

had known the applicant for fifteen years, that he did not regard her as a good physical risk, and would not recommend her as a first-class physical risk, and that she had a slight attack of hemaplegia just two months before the application. The application, with this statement, was thereupon submitted to the proposed beneficiary by the local agent. In reference to the statement of the medical advisor that his mother was not a good physical risk, the beneficiary remarked that the physician who made the statement "didn't know a damned thing" about his mother's condition, and referred the local agent to his mother's family physician in the town, and urged the agent to at once forward the application to the company and to procure the policies for him. The application was received at Dawson, the home office of the company, on the 31st day of May. On the same day nearly one hundred similar applications had been received. The evidence discloses that the president of the company had little to do with its practical business operations, that the vice-president was constantly on the road traveling in the interest of the company, and that to meet the exigencies of their absence, many blank copies of policies were signed and countersigned by both these officers and left in the office. It was the sole duty of the secretary and treasurer of the company to examine applications, and when applications were approved by him, he directed the stenographer to fill in the policies and send them to the different local agents for delivery. On May 31 the secretary and treasurer, in pursuance of his duty, examined a great many applications, but did not examine the application in the present case. While in the midst of his work he was suddenly called from his office and left the approved applications, and those not approved, together on his desk or table. During his absence until the next morning from the office the stenographer filled out all the policies relating to the different applications, both those which had been approved and those which not been approved, and when the secretary and treasurer returned to the office he found that the policies in this case had been filled out by the stenographer and sent to the local agent to be delivered to the insured. He did not discover this fact, however, until he had read and examined the application for insurance, when he discovered the adverse statement of the local medical advisor of the company. As soon as he discovered this fact and found that the policies had been sent on to the local agent, both he and the vice-

president of the company telephoned to the local agent not to de-
liver the policies to the insured, and, if he had already delivered
them, to recover possession thereof and to tender any premium that
had been paid. Following the telephone message was a letter to the
same effect. Before the telephone message had been received by
the local agent, he had delivered to the beneficiary, the plaintiff in
this case, the policies, he claiming to be the agent of the insured to
receive them, and had received from the beneficiary his check for the
premiums. The premiums were not sent to the company by the
local agent, but were in his hands when he received the telephone
message to recover the policies. When the beneficiary received the
policies he discovered that his name as beneficiary had been incor-
rectly stated therein, and he returned the policies to the local agent,
with the request that he transmit them to the company to make the
proper correction as to his name. The policies were immediately re-
turned to the company by the local agent as requested. The same
day the local agent, having received the telephone message referred
to, went to the beneficiary, stated to him the instructions which he
had received with reference to the policies, and tendered the amount
of the premiums which he had received from him the day before.
The beneficiary refused to accept the premiums, and insisted that
the local agent go to the home office at his expense and induce the
company to return the policies. This the local agent did, but he
failed in his mission, the company declining to redeliver the policies,
on the ground that they were issued by mistake; but the company
directed the local agent to inform the beneficiary that if he could
procure a statement from his mother's family physician that she was
a good physical risk, they would issue new policies for the ones
they had cancelled. The local agent so informed the beneficiary,
but he declined to accede to the proposition to have his mother ex-
amined by her family physician, and thereupon employed counsel
to recover the policies for him by legal proceedings. The undis-
puted evidence shows, that the applicant had been operated on for
cancer of the womb some fifteen years previous to her application;
that on the 5th day of April previous to the application on May 28
she had been stricken with apoplexy, which left her in a condition
of partial paralysis from which she was suffering at the time she
made the application for the insurance, and that the disease affected
both her voice and her power of locomotion. She suffered a second

stroke on July 14, causing her death. All of the doctors who attended her, as well as the medical advisor of the company, testified that no insurance company would insure the life of any one who had suffered from cancer or apoplexy, and that these diseases were universally considered of such a serious character as to utterly exclude the possibility of getting insurance in standard companies. The applicant, when she made her application, knew that she had been operated on for cancer; and although she was not fully informed as to the extent or seriousness of her condition due to the attack of apoplexy and paralysis, since the physician, in order not to alarm her, had failed to inform her, yet she must necessarily have known that her physical condition was very serious. The beneficiary in this case, according to the evidence, knew that his mother had been operated on for cancer, or had been taken to New York for that purpose, and knew that she had had a serious attack just a few weeks prior to her application for insurance. In his different interviews with the local agent he appeared to be very solicitous for the policies, urging the agent to get the application and hurry it up. When the policies were delivered to the beneficiary by the local agent, the insured was not in good health, but had been stricken with apoplexy resulting in paralysis, and this fact was known to the beneficiary. These are the facts of the case, and from them the conclusion is irresistible that a verdict was demanded for the defendant. The undisputed evidence shows, that the policies were not issued in a legal sense by the company, that by a mistake of the stenographer they had been filled in and sent to the local agent before the application had been examined and approved, and that immediately upon discovering this fact the policies were recalled, and the premiums tendered back. The facts make a clear case in law, equity, and good conscience for relief. The company had not assented to the policy contracts, and clearly they were issued as the result of a mistake, which the company endeavored to rectify as soon as it was discovered. Civil Code of 1895, §§ 3637, 3983, 3968, 3973. It may be that the mistake was pleaded under very meager and general allegations; but there was no demurrer to the plea in this respect, and the evidence was clear, undisputed, and wholly sufficient.

The foregoing opinion would seem to make it unnecessary for this court to pass upon the other defenses relied upon, of fraud in the procurement of the policies both by the beneficiary and the in-

sured, and the fact that the insured was not in good health when the policies were delivered. We will not go into these questions at any length, but simply content ourselves with the statement that, applying well-settled principles of the law of insurance, as incorporated in our code (Civil Code of 1895, §§ 2097, 2098), to the undisputed evidence, the verdict should have been in favor of the defendant. *Maddox* v. *Southern Insurance Association,* 6 *Ga. App.* 681 (65 S. E. 789) ; *Northwestern Life Insurance Co.* v. *Montgomery,* 116 *Ga.* 799 (43 S. E. 79). We do not think that the act of August 17, 1906 (Acts 1906, p. 107), relied upon by the defendant in error, is intended to deprive an insurance company of the defense allowed, both under the law of this State and under the law of the contract, that fraud in the procurement of the contract will avoid the insurance. This act provides that where a reference is made in the policy of insurance to the application, a correct copy of the latter must be attached to the policy; and, unless this is done, the application shall not be considered a part of the policy or contract between the parties; "but this does not exclude an insurance company from showing that the policy was procured by fraud and misrepresentation." *Johnson* v. *American National Life Ins. Co.,* 134 *Ga.* 802 (68 S. E. 731). But, as before intimated, we deem it unnecessary to go into the questions of fraud in this case further than to state that the evidence abundantly shows that the policies were procured by fraud and misrepresentation of facts which materially increased the risk and rendered them void. It is enough to hold that the policies, under the undisputed facts, were issued through mistake and accident from which the company had a clear legal and equitable right to be relieved.

A great many assignments of error are specifically made in the amended motion for a new trial, but these will not be considered, because, in our opinion, on the merits of the case the verdict should be set aside and a new trial granted.          *Judgment reversed.*