# ANNA WHEELOCK v. HOME LIFE INSURANCE COMPANY.[1]

### July 7, 1911.

### Nos. 17,210—(248).

**Application for life insurance — statements by applicant — construction of statute.**

A policy of life insurance contained the provision required by Laws 1907, c. 220, that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy unless it is contained in a written application and a copy of such application shall be indorsed upon or attached to this policy when issued." This provision construed, and *held*, that the words "such statement" do not mean statements made in the absence of fraud, but do mean statements made by an applicant relating to his history, habits, or health, of the character usually asked, answered, put in writing, and signed by an applicant for insurance, whether such statements are made in the absence of fraud or not.

**Same — copy not attached to policy.**

The court rightly excluded from evidence statements made by the applicant in a writing, a copy of which was not indorsed on or attached to the policy.

**Admission of evidence.**

There was no prejudicial error in the rulings of the trial court as to the exclusion or admission of evidence.

**Absence of fraud — directed verdict.**

The evidence did not make a prima facie case of fraud, and the court was justified in directing a verdict for plaintiff.

[1] Reported in 131 N. W. 1081.

115 M.—12.

**Newly discovered evidence — discretion of court.**

In denying defendan'· motion for a new trial on the ground of newly discovered evidence, an. in denying its motion to amend the answer, the trial court did not abuse its discretion.

Action in the district court for Morrison county to recover $1,000 upon a life insurance policy. The case was tried before Taylor, J., who directed a verdict in favor of plaintiff for the amount of the policy and interest. From an order denying defendant's motion for judgment notwithstanding the verdict, or for a new trial on the ground of newly discovered evidence, or for leave to file an amended answer, it appealed. Affirmed.

*Davis, Kellogg & Severance* and *Elmer A. Kling,* for appellant.

*D. M. Cameron,* for respondent.

BUNN, J.

On February 14, 1910, defendant issued to Frank Wheelock its policy of insurance on his life. The amount of the policy was $1,000, payable upon due proof of the death of the insured to the plaintiff, his stepmother. The first annual premium was paid at the time application was made. Wheelock died April 10, 1910, and this action was brought to recover on the policy.

The answer alleged that Wheelock applied in writing for the policy on February 9, 1910, and that in such application questions were asked and answered by applicant as follows:

"Q. How long has it been since you last consulted a physician or were under the care of one? A. Eight years ago. Q. His name and address? A. Dr. N. Dumont, Little Falls, Minn. Q. What was the ailment? A. Typhoid fever."

Defendant alleged that each of these answers were false, and known to be false by Wheelock when made; that they were made by him fraudulently, to cause the acceptance of the risk and the issuance of the policy; that in fact on January 14, 1910, Wheelock consulted a physician and was treated for cystitis; that, had defendant known this fact, it would not have issued the policy. The answer also contained the following allegation: Defendant "further

avers that the death of the said Frank Wheelock was the result of certain diseases with which he was afflicted at the time of making his application for insurance, and that the existence of the same were known to him, and by him fraudulently concealed from said company, at the time he made his said application."

On the trial plaintiff proved the issuance of the policy, the death of the insured, the furnishing of proofs of death, and rested. Defendant called Dr. Dumont as a witness. He testified that Wheelock consulted him as a physician in December, 1909. He was asked the question: "Did you attend Frank Wheelock for typhoid fever eight years prior to the year 1910?" This question was objected to, and the objection was sustained.

Defendant offered in evidence the proofs of death, which contained an affidavit by plaintiff, an affidavit by the attending physician, and the undertaker's affidavit. On objection the affidavits of the physician and undertaker were excluded, but plaintiff's affidavit admitted. Defendant called Dr. Fortier, who testified that on January 14, 1910, Wheelock consulted him, and that he gave Wheelock a prescription. Defendant offered in evidence the application, a copy of which was indorsed on the policy, and a paper containing the declarations of the applicant to the examining physician, which was not indorsed on the policy. The court received the former, but excluded the latter. The application, a copy of which was indorsed on the policy, contained no statements by the applicant as to his health, or as to when he had last consulted a physician. The questions and answers in that regard were contained in the paper offered and excluded, entitled "Applicant's Declarations in Continuation of His Application for Insurance." Defendant made no offer or attempt to show fraudulent representations or fraudulent concealment, except as above stated.

At the close of the evidence the court directed a verdict in favor of plaintiff. Defendant afterwards moved for judgment notwithstanding the verdict, or a new trial. One of the grounds urged for a new trial was that of newly discovered evidence tending to show that the insured, shortly prior to the issuance of the policy, was suffering from a dangerous malady. Defendant also moved for leave

to amend its answer. These motions were denied, and defendant appealed from the order.

1. The first question for our consideration is whether the trial court ruled correctly in excluding from evidence the paper that contained the applicant's answers to the questions as to when and for what he had last consulted a physician. The ruling was based on the ground that, as these statements were not contained in an application indorsed on the policy, they could not be made the basis of a defense of fraudulent representations. The policy was in the standard form provided by Laws 1907, p. 251, c. 220 (R. L. Supp. 1909, §§ 1695—2 to 1695—12), which requires the policy to contain this provision: "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy unless it is contained in a written application and a copy of such application shall be indorsed upon or attached to this policy when issued." The policy involved in this case begins: "In consideration of the application for this policy, copy of which is indorsed hereon." It contains the above provision as required by law, and makes it stronger by saying that "no such statement shall avoid this policy or be used in defense of a claim hereunder."

Defendant argues that the word "such," used in the law and in the policy in the phrase "no such statement," refers back to the words: "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." In other words, defendant claims that "such" statement means a statement made in the absence of fraud.

We cannot agree with this construction. If it is adopted, the requirement that the application be indorsed on or attached to the policy is of little value. We think the true construction of the language of the statute is that, in the absence of fraud, statements made by the insured are deemed representations, not warranties, but that statements, whether fraudulently made or not, will not avoid the policy, unless they are contained in a written application, and unless a copy of such application is indorsed upon or attached to the policy. The use of the word "such" is not especially significant.

The law says: "All statements made by the insured shall, in the absence of fraud, be deemed representations." The word "such" refers, we think, to "all statements made by the insured." Had the legislature meant statements made "in the absence of fraud," it would have been easy to have inserted those words.

The provision is clearly remedial, designed to prevent technical defenses. As we have construed it, the law will have the effect designed, and works no hardship on the insurer. Compliance with the provision is very simple, and gives the insurer full protection against fraudulent statements of material facts made by the insured to the agent or to the examining physician. All that is necessary is to have such statements in the application, and attach a copy of the application to the policy. We do not hold that this provision is applicable where an insurance company is induced by fraud to issue a policy, where such fraud consists of acts or representations on the part of the insured that are not of a nature that are properly or usually in the form of statements in a written application. We do hold that statements by the applicant as to his history, habits, and health, such as are ordinarily asked by the examining physician, and questions and answers reduced to writing, signed by the applicant, whether such statements are made "in the absence of fraud" or not, must, in order to avoid the policy, be contained in a written application, and such application must be attached to or indorsed on the policy.

2. Defendant urges that it was error to exclude from evidence the affidavits of the physician and the undertaker contained in the proofs of death furnished by plaintiff. If this was error, it was without prejudice. The undertaker's affidavit was clearly immaterial. The affidavit of the physician contained a statement that he gave Wheelock a prescription for cystitis on January 14, 1910. This is exactly what the physician who made the affidavit testified to on the trial, and it certainly was not prejudicial to exclude the affidavit.

3. Defendant urges that the court erred in directing a verdict for plaintiff, for the reason that there was enough evidence of fraud on the part of Wheelock to make a case for the jury. As the bill of exceptions is not certified to contain all the evidence, we might uphold the action of the trial court on that ground alone. There was

no offer to prove any fraud by Wheelock, except in the matter of his having consulted physicians contrary to the statement contained in the excluded paper. The evidence received does not tend to show any fraudulent act or representation that induced the issuance of the policy, except in so far as it proves the falsity of the applicant's statement that he had not consulted a physician for eight years. Even if this statement was not one that the law makes necessary to be contained in a written application indorsed on or attached to the policy, we do not think that proof of its falsity alone makes a case of fraud that defendant was entitled to have submitted to the jury. In view of the allegations of the answer, the evidence that appears in the record, and the failure to certify that the bill of exceptions contained all the evidence, we can see no justification for holding that the direction of a verdict was not warranted.

4. The motion for a new trial on the ground of newly discovered evidence and the motion to amend the answer were addressed to the sound discretion of the trial court. In denying these motions, the court did not abuse its discretion.

Order affirmed.