SOUTHWESTERN SURETY INS. CO. v. HICO OIL MILL. (No. 8766.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 16, 1918. On Rehearing, April 13, 1918.)

1. GUARANTY ⟨Key⟩20—PRINCIPAL AND SURETY ⟨Key⟩39—MISREPRESENTATION—EFFECT.

It is a general rule that if one is induced to become a surety or guarantor for another through material misrepresentations of fact, the contract is invalid, and obligor will be discharged, even though the representations are honestly made.

2. INSURANCE ⟨Key⟩134(2)—APPLICATION—DEFENSES.

Failure to attach application and questions and answers as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 4951, providing that every contract or policy of insurance issued or contracted for in this state shall be accompanied by a written, photographic, or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto, deprives an insurer on fidelity bond of the defense that misrepresentations made without knowledge of their falsity, and with no intention to deceive, would vitiate the policy, although such misrepresentations would vitiate the policy in the absence of such statute.

3. INSURANCE ⟨Key⟩134(2) — FIDELITY INSURANCE—REPRESENTATIONS.

An "employer's statement" consisting of questions and answers required by a fidelity insurance company in addition to an application by the employé, was one required by Vernon's Sayles' Ann. Civ. St. 1914, art. 4951, to be attached to the policy or bond.

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Action by C. H. Bencini, doing business under the trade name of the Hico Oil Company, against the Southwestern Surety Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Capps, Cantry, Hanger & Short and Wm. L. Evans, all of Ft. Worth, and John T. Suggs, of Denison, for appellant. McLean, Scott & McLean, of Ft. Worth, and C. L. McCartney, of Brownwood, for appellee.

DUNKLIN, J. From a judgment in favor of C. H. Bencini, doing business under the trade-name of the Hico Oil Company, against the Southwestern Surety Insurance Company upon its bond in which it agreed to re-

imburse plaintiff for any pecuniary loss he might sustain through the fraud or dishonesty of Horace M. Scales, his employé and business manager, the defendant has appealed.

Scales made a written application to the defendant for the bond, upon a printed form containing many questions propounded to him with blanks to be filled in with his answers thereto, and in which his answers were written. Upon receipt of the application and before issuing the bond, defendant mailed to plaintiff a printed statement in blank styled "employer's statement," to be filled out and returned to the company together with a letter reading as follows:

"Hico Oil Mill, Hico, Texas. An application has been made to this company to issue a bond of security for Mr. Horace M. Scales as manager in your service at Hico, to the amount of $5,000. The company desires to have answers to the following questions, and the answers will be taken as a part of the consideration for the bond if issued. Very respectfully yours, W. B. Munson, President."

Upon receipt of the letter and blank statement, plaintiff filled in the blanks with his answers to the numerous questions propounded to him and returned the same to the surety company. Upon receipt of that statement the defendant executed and delivered to plaintiff the bond sued on. The only provisions of the bond material to this controversy are as follows:

"Whereas, Horace M. Scales, Hico, Tex., hereinafter called the "employé," has been appointed to the position of manager in the service of Hico Oil Mill, Hico, Tex., hereinafter called the "employer" and has been required to furnish a bond for his honesty in the performance of his duties in the said position; and whereas, the employer has delivered to Southwestern Surety Insurance Company, with general offices at Durant, Okl., a corporation organized under the laws of Oklahoma, hereinafter called the "company," a statement in writing setting forth the nature and character of the office or position to which the employé has been elected or appointed, the nature and character of his duties and responsibilities and the safeguards and checks to be used upon the employé in the discharge of the duties of said office or position, and other matters, which statement is made a part hereof:

"Now, therefore, in consideration of the sum of twelve and 50/100 dollars, paid as a premium for the period from October 7, 1911, to October 7, 1912, at 12 o'clock noon, and upon the faith of the said statement as aforesaid by the employer which the employer hereby warrants to be true, it is hereby agreed and declared that subject to the provisions and conditions herein contained, which shall be conditions precedent to the right on the part of the employer to recover under this bond, the company shall within three months next after notice, accompanied by satisfactory proof of a loss as hereinafter mentioned, has been given to the company, make good and reimburse to the employer all and any pecuniary loss sustained by the employer of money, securities, or other personal property in the possession of the employé, or for the possession of which he is responsible, by any act of fraud or dishonesty the part of said employé in the discharge of the duties of his office or position as set forth in said statement referred to, amounting to larceny or embezzlement, and which shall have been committed during the continuance of this bond, or any renewal thereof,

and discovered during said continuance, or within six months thereafter, or within six months from the death or dismissal or retirement of the employé from the service of the said employer."

The bond was in the sum of $5,000 and was dated September 10, 1911, at which time Scales was, and had been for several years prior thereto, in the employment of plaintiff. Among other defenses the surety company pleaded that the execution and delivery of the bond was induced by belief in the truth of the representations of plaintiff contained in the "employer's statement," and further alleged the falsity of those representations which were to the effect that at the time the statement was made Scales was not indebted to plaintiff in any sum; that his accounts with plaintiff had been properly checked and showed that all funds and securities with which he was chargeable were on hand, and that none of same had been misappropriated nor converted to his own use by Scales. It was alleged that upon the date of the "employer's statement" Scales was indebted to plaintiff in divers sums, and prior thereto had misappropriated and embezzled funds belonging to plaintiff, all of which facts were known to plaintiff, or by the exercise of due diligence should have been so known, and that his misrepresentations of the same constituted a fraud, which vitiated the bond issued in reliance thereon. Upon the trial, defendant offered in evidence the "employer's statement" to support said defense of fraud, but the same was excluded by the trial court upon plaintiffs' objection to the effect that it was rendered inadmissible by virtue of those provisions of article 4951, Vernon's Sayles' Tex. Civ. Stats., which are as follows:

"Every contract or policy of insurance issued or contracted for in this state shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto."

The trial was upon an agreed statement of facts, and the only assignments of error presented are to the action of the court in excluding such evidence and refusing to render judgment in favor of the defendant based on that proof. The following appears in the statement of facts:

"It is further agreed that the fidelity bond sued on in this case was not accompanied by any written, photographic, or printed copy of the application for such fidelity bond, which said application as above referred to is hereto attached, nor of any written, photographic, or printed copy of the 'employer's statement,' heretofore referred to and attached, accompanied the same, but the said fidelity bond was delivered just as it appears hereto attached, with no other documents of any kind accompanying or attached to the same.

"It is further agreed that during the period covered by the fidelity bond plaintiff sustained a pecuniary loss amounting to as much as the sum of $5,000 through dishonesty on the part of H. M. Scales while in the discharge of the duties of his position, amounting to larceny or embezzlement committed during the continuance of the bond, and that notice and proof of loss were

furnished defendant company in the manner provided for by the terms of the bond.

"It is further agreed that sufficient facts exist, as alleged by defendant, to constitute a complete avoidance of liability on the fidelity bond; provided the 'employer's statement' heretofore referred to is admitted in evidence and considered by the court, but not otherwise, but C. H. Bencini personally did not know the answers in said statement were untrue at the time he signed the same, but was legally chargeable with such knowledge.

"It is further agreed that the plaintiff, waiving all other objections to its admissibility, objects to the admission and consideration by the court of the 'employer's statement' upon the sole ground, to wit: First, that the fidelity bond hereto attached and sued on in this case, was not accompanied by said 'employer's statement,' or any written, photographic, or printed copy thereof, nor was said fidelity bond accompanied by the application hereto attached, nor any written, photographic, or printed copy thereof; and, second, that the fidelity bond was not accompanied by any statement of any kind or character but was delivered just as it appears hereto attached and made a part hereof.

"It is further agreed that the defendant offers in evidence in connection with other facts agreed to exist the said 'employer's statement,' and urges its admission and· consideration by the court.

"It is further agreed that the 'employer's statement' is material and admissible in evidence unless excluded on the grounds stated in paragraph six hereof. In the event it should be held that plaintiff's objections to the introduction of the 'employer's statement' are well taken, then plaintiff's admissions as above recited are not to be considered for any purpose, but in the event plaintiff's objections are not well taken then said agreements and admissions herein contained shall be considered for all purposes.

"It is further agreed that nothing herein shall be construed as a waiver of the right of appeal, and that both plaintiff and defendant reserve the right to object and except to the action and ruling of the court in the admission and consideration, or in the exclusion of the said 'employer's statement,' as well as the right to object and except to and to appeal from any judgment rendered in this cause upon this agreement, or any judgment, decree, or order of the court of whatsoever nature that may be hereafter made.

"It is further agreed that the plaintiff, if entitled to recover at all under this agreement, is entitled to recover against defendant the sum of $5,000 with interest thereon from the 1st day of June, 1912, at the rate of 6 per cent. per annum, together with all costs of suit; and that defendant, if entitled to judgment in its favor upon this agreement, is entitled to judgment that plaintiff take nothing against defendant and that it go hence without day. and recover of plaintiff all costs of suit."

[1] It is a géneral rule that, if one is induced to become a surety or guarantor for another through material misrepresentations of fact, such contract of the surety or guarantor will thereby be rendered invalid and the obligor will be discharged from liability thereon; and this is true even though such misrepresentations are honestly made with no intention to deceive or defraud. Culbertson v. Blanchard, 79 Tex. 491, 15 S. W. 700; Benton v. Kuykendall, 160 S. W. 443; Bank of Hardinsburg & Trust Co. v. American Bonding Co. of Baltimore, 153 Ky. 579, 156 S. W. 398, 12 R. C. L. p. 335 et seq. In support of its contention that in order to avoid the bond on its plea that the same was procured by misrepresentations of material facts which constituted a legal fraud, appellant has cited Johnson v. American National Life Ins. Co., 134 Ga. 800, 68 S. E. 731, Southern Life Ins. Co. v. Hill, 8 Ga. App. 857, 70 S. E. 186, and Southern Life Ins. Co. v. Logan, 9· Ga. App. 503, 71 S. E. 742, all by the Supreme Court of Georgia; Bowyer v. Continental Casualty Co., 72 W. Va. 333, 78 S. E. 1000, by the Supreme Court of West Virginia; Coleman v. Retail Lumbermen's Ins. Association, 77 Minn. 31, 79 N. W. 588, by the Supreme Court of Minnesota; and Carrigan v. Mass. Benefit Ass'n (C. C.) 26 Fed. 230. We shall quote from Johnson v. Amer. Nat. Life Ins. Co., the case first cited, in order to show the statute, there construed and the reasoning advanced:

"The principal question involved is as to the effect of the act of August 17, 1906 (Acts 1906, p. 107). It declares that: 'From and after the passage of this act all life and fire insurance policies issued upon the life or property of persons within this state, whether issued by companies organized under the laws of this state or by foreign companies doing business in this state, which contain any reference to the application for insurance, or the constitution, by-laws, or other rules of the company, either as forming part. of the policy or ·contract between the parties thereto, or having any bearing on said contract, shall contain or have attached to said policy a correct copy of said application. signed by the applicant, and of the by-laws referred to; and unless so attached and accompanying the policy, no such constitution or by-laws shall be received in evidence either as part of the policy or as an independent contract in any controversy between the parties to or interested in the said policy; nor shall such application or by-laws be considered a part of the policy or contract between such parties.' This act provides that, where a reference is made in the policy of insurance to the application, a correct copy of the latter must be attached to the policy, and unless this is done, such application shall not 'be considered a part of the policy or contract between such parties.' But this does not exclude an insurance company from showing that the policy was, procured by fraud and misrepresentation.

"To consider the application as a part of the contract of insurance, and as forming a warranty or covenant, treats the policy as a valid contract and sets up one of its terms. To seek to set aside or repudiate the policy as having been obtained by fraud is to set up that there was no valid and binding contract of insurance. The two things are entirely different. The legislative enactment, which declares that, under certain circumstances, an application for insurance mentioned in the policy shall not be considered a part of the policy or contract between the parties, does not prohibit one of such parties from showing that, whatever the contract was, it was procured by the fraud of the other."

That decision was cited with approval and followed in the two other cases decided by the Supreme Court of Georgia. Bowyer v. Continental Casualty Co., supra, was a suit against the casualty company upon a policy of insurance, and in which suit the company pleaded certain false statements made by the insured in his application for the policy, which induced its execution and delivery; said false statements being plead-

ed both as a breach of warranty and as a fraud which vitiated the policy. In that case, as in the present suit, an objection was sustained by the trial court to the introduction of the written application for the policy, because it was not attached to the policy and was therefore not admissible by virtue of a statute of the state reading as follows:

"In all policies of insurance issued against loss by fire, made by companies chartered by or doing busines in this state, no condition shall be valid unless stated in the body of the policy or attached thereto."

In discussing the objection to such evidence, the court held that by virtue of that statute it was not admissible as forming a part of the contract of insurance, but said further:

"Though inadmissible to prove statements of the insured as a warranty or part of the policy, because not attached to it, the application was admissible, together with other evidence, to prove fraud in the procurement of the policy. A false statement made in the application for a policy is none the less false because made therein; and, if it is an element or fact in a scheme of fraud to procure the issuance of a policy, under circumstances under which it would not be issued if the insurer had been advised of the true situation, it stands upon the same footing as if made in any other paper or way."

The case of Coleman v. Retail Lumbermen's Ins. Ass'n was to the same effect and involved a statute similar to that of this state referred to above. Carrigan v. Mass. Benefit Ass'n, supra, is to the same effect, and in that case the statute which was the basis of the objection urged to the introduction of the application for the policy, like our own statute, required that the application for the policy be attached thereto, and further provided that:

"Unless so attached and accompanying the policy no such application * * * shall be received in evidence, in any controversy between the parties to, or interested in, the said policy, nor shall such application * * * be considered a part of the policy or contract between such parties."

Appellee has cited many decisions squarely in conflict with those relied on by appellant and which, we think are sustained by better reasoning. The case of New York Life Ins. v. Hamburger, reported in 174 Mich. 257, 140 N. W. 512, decided by the Supreme Court of Michigan, involved the construction of a statute reading:

"No policy of life insurance shall be issued in this state, unless the same shall contain the following provisions: * * * Fourth, a provision that all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application and a copy of such application shall be indorsed upon or attached to the policy when issued."

In discussing that statute the court said:

"A careful study of the language of the section convinces us that innocent misstatements or omissions to answer on the part of the applicant shall be held to be simply representations; but, in case that fraud can be shown, they shall be held to be warranties. In no case, however, shall the policy be subject to attack unless such statement claimed to be fraudulent is contained in the written application indorsed upon or attached to the policy when issued. It undoubtedly seemed fair to the Legislature that the policy holder should have in his possession, during his lifetime, such statements or representations which might be claimed, after his death, to have been fraudulent, so that he might know, or could be held to know, what the contract was which he had entered into. * * *

"Complainant's solicitor urges that fraud vitiates all contracts, and that any contract which provides for removing the defense of fraud is void as against public policy; and numerous authorities are cited in support of this contention. In the instant case, it is not a question of the contract being against public policy, but rather what the Legislature of this state has declared its policy to be. What is public policy? The term has frequently been used in a loose, vague, and inaccurate sense. We may, however, safely say that, when we speak of the public policy of this state, we mean the law of the state, whether found in its Constitution, the statutes, or the judicial records. People v. Hawkins, 157 N. Y. 1, 51 N. E. 257, 42 L. R. A. 490, 68 Am. St. Rep. 736; 32 Cyc. 1251. A statute of the state must be respected unless it is in conflict with the Constitution of the state or the Constitution of the United States. Whitfield v. Ætna L. Ins. Co., 205 U. S. 489, 27 Sup. Ct. 578, 51 L. Ed. 895.

"The people having spoken through their representatives in the Legislature, and having prescribed what an insurance company must do in order to make a defense because of fraud, that requirement being a part of the law, it becomes the public policy of the state. The Legislature did not say that the company should not defend for fraud perpetrated in obtaining insurance, but did say that, if the company wishes to make this defense, it must attach the application containing the alleged fraudulent statement to the policy. If the company desires to do business in this state, it must do it subject to such valid and reasonable regulations as the state may determine to prescribe."

To the same effect are the following cases, in which substantially the same reasoning was advanced: Considine v. Metropolitan Life Ins. Co., 165 Mass. 462, 43 N. E. 201; Corson v. Iowa Mut. Fire Ins. Ass'n, 115 Iowa, 485, 88 N. W. 1086; Wheelock v. Home Life Ins. Co., 115 Minn. 177, 131 N. W. 1081; Biermann v. Guaranty Mut. Life Ins. Co., 142 Iowa, 341, 120 N. W. 963; Coats v. Camden Fire Ins. Ass'n, 149 Wis. 129, 135 N. W. 524.

Counsel for appellant stress the fact that by the statute of this state noted above no penalty is provided for a failure to attach a copy of the application to the policy of insurance; in other words, the statute contains no provision to the effect that if the application is not attached it shall not be admissible in evidence in support of any defense predicated upon statements contained therein. In some of the decisions cited by appellant the statutes involved contained provisions to that effect, but in all of them the statements contained in the applications were held to be admissible on the broad ground that if untrue, and if they induced the issuance of the policy, then the policy was fraudulently procured and could for that

reason have no legal effect whatever, upon the general theory that fraud vitiates all contracts because against public policy. In the following cases statements contained in the application for the policies sued on were likewise held inadmissible in evidence to sustain pleas of fraud in the procurement of the policies under statutes very similar to our own statute, and in which no penalty was prescribed for failure to attach the application to the policy, as required by the statutes.

In the case of Schuler v. Metropolitan Life Ins. Co., 191 Mo. App. 527, 176 S. W. 274, in which the company sought to avoid the policy for fraudulent misrepresentations made in the application, the court, after referring to the statute which required the substance of the application, upon which a policy is issued and which is made a part of the contract of insurance to be attached to or indorsed on the policy, used the following language:

"But it is argued that this section of our statute carries with it no specific penalty. The answer is, that the statute requires the thing to be done. One cannot, failing to obey the law, claim any right founded on that disobedience. By failing to attach the policy or its substance, defendant, under the law, lost whatever benefit it might seek under the application. * * * We are not holding that the failure to attach the application or its substance to the policy nullifies the policy. What we do hold is that this absence bars defendant from using it against plaintiff. It follows that when plaintiff introduced the policy, its execution admitted payment of premiums admitted, the death of the insured admitted, and plaintiff being the beneficiary, that defendant should not have been permitted to introduce the application and its certificates to sustain a defense of misrepresentations."

In the case of Archer v. Equitable Life Assur. Soc. of United States, 218 N. Y. 25, 112 N. E. 434, the company pleaded that the policy was void because procured by fraudulent misrepresentations contained in the application. The statute invoked to sustain an objection made to the introduction of the application upon the defense of fraud required such an application to be attached to the policy, but prescribed no penalty for failure so to do. In discussing that statute the court said:

"In the requirements that the policy should contain the entire contract and that 'all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties,' the Legislature enacted, through implication, that all statements made by the assured shall be purported by, or made to appear upon, the face of the policy, * * * the defense designated 'Third' averred that the policy was issued by the defendant in reliance upon statements, representations, and answers of the insured pertaining to his previous medical history and family record and to his physical condition at and prior to the date of his application for the policy, which were fraudulently not full and fair, and effected concealments material to the risk, and the defendant relied upon them as made. The statements, representations, and answers were not incorporated in the policy. This defense could be established only by proof of them. Inasmuch as they could not be proven for the reasons already stated, the defense is not sufficient in law upon the face of it."

See, also, Arnold v. New York Life Ins. Co. (Tenn.) 177 S. W. 78.

In the case of American Nat. Ins. Co. v. Briggs, 156 S. W. 909, and Southern Union Life Ins. Co. v. White, 188 S. W. 266, by Courts of Appeals of our own state, it was held that a life insurance policy containing a clause of incontestability after a period of two years, in compliance with the requirement of our statutes, could not be avoided by proof that it was procured by fraudulent misrepresentations of fact by the insured which induced its execution.

[2] It is quite clear that article 4951 of our Statutes requires all policies of the character now in suit to be accompanied by a copy of the application therefor and of all questions asked and answers given thereto upon which the policy is issued. Failure to comply with that statutory requirement certainly deprives the insurance company of some rights it would otherwise have. That one of the rights so lost would be that of the insurer to say that statements so made by the insured constitute a part of the contract is not denied by appellant. We think the further inference obtains that the Legislature, in enacting the statute, intended that a failure of the insurer to comply with the mandate of the statute deprives it of the further defense as to such misrepresentations, inducing the issuance of a policy, as are made in good faith, and in ignorance of their falsity, and with no intention to deceive or defraud the insurer, although such misrepresentations so made would constitute what is sometimes inaptly designated as a "fraud in law," or "legal fraud," which, in the absence of the statute, would vitiate the policy. 1 Elliott on Contracts, § 375; 20 Cyc. 9.

If the insurer is permitted to take advantage of misrepresentations which are not made a par' of the contract of insurance, but which constitute a mere legal fraud as distinguished from an intentional fraud, then such a defense would accomplish the same result as if such misrepresentations were legally made a part of the contract of insurance and a breach of the contract in that respect were urged as a defense, for the same evidence would support either of those defenses and with the same effectiveness. Whether or not a defense based upon misrepresentations made with intent to cheat and defraud is also precluded by the statute is a question not presented for our determination, and which we shall not attempt to decide, since it was agreed by the parties that the misrepresentations in question were not made with such intent, but were honest mistakes on the part of the insured.

[3] We are of the opinion further that although the "employer's statement" was not, strictly speaking, the application for the pol-

icy, yet we think that the questions asked and answers thereto shown therein are such questions and answers a copy of which was required by the statute to accompany the policy, since the policy was issued for the benefit of the employer, and in reliance upon his answers to questions propounded to him by the insurance company for the purpose of determining whether or not it would issue the policy. In fact, according to appellant's contention the statements of the employer, rather than the statements contained in the application of Scales, were the inducing cause of the issuance of the policy.

For the reasons indicated all assignments of error are overruled, and the judgment of the trial court is affirmed.

Affirmed.

CONNER, C. J., not sitting.

On Rehearing.

DUNKLIN, J. In the opinion rendered on original hearing, we inadvertently said that it was agreed by the parties that the misrepresentations of the insured which induced the issuance of the policy were honest mistakes on his part and with no intention to defraud. The agreement of counsel with respect to that issue is copied in our original opinion and is as follows:

"C. H. Bencini, personally, did not know the answers in said statement were untrue at the time he signed the same, but was legally chargeable with such knowledge."

We construed the agreement as meaning that in making the statements in controversy C. H. Bencini had no intention to defraud the insurance company, and that if he had no such intention necessarily his motive in making them was honest, even though he was legally chargeable with knowledge of the fact that they were untrue. That, and no more, was what we meant by our reference to the agreement criticized in the motion and above mentioned.

With this correction of our former opinion the motion for rehearing is overruled.

Motion overruled.