Margaret Dixon, Appellee, v. Northwestern National Life Insurance Company, Appellant.

INSURANCE: Failure to Attach Copy of Application.  A misrepresentation by insured of his age *is not provable*, when neither the application (which contains the misrepresentation) nor a copy thereof is attached to the policy, whether the policy be issued by a domestic or a foreign company, and whether the action in which such proof is sought to be made is at law or in equity.  (Secs. 1741, 1819, Code, 1897.)

CORPORATIONS: Right of Foreign Corporation.  Principle reaffirmed that a foreign insurance corporation may not transact business in this state unless with the consent of the state, and unless compliance is had with the laws of this state.

CORPORATIONS: Foreign Corporations—''Doing Business in this State.''  The act of a foreign corporation in soliciting insurance in this state, of a citizen of this state, and delivering the policy in this state, constitutes a "doing (of) business in this state." (Secs. 1741, 1819, Code, 1897.)

INSURANCE: Failure to Attach Copy of Application.  Failure to attach an application for insurance, or a copy thereof, to the policy, works no invalidation of the policy, but simply prevents the insurer from pleading, proving, or disproving such application or any part thereof, when the same bears on the validity of the policy.

INSURANCE: Understating Age—Amount Recoverable.  The provision of Sec. 1813. Code, 1897, as amended by Ch. 348, Sec. 11, 38 G. A. (1919), providing that, in case the insured has *understated* his age, recovery shall be limited to the amount which

the premium paid would have purchased at the correct age, has application only to those cases wherein the fact of *understating the age* is legally provable by the insurer. In other words, if the copy of the application containing such "understating" of age, or a copy thereof, be not attached to the policy, then the fact of such "understating" of age is not legally provable, and Sec. 1813 has no application.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

NOVEMBER 16, 1920.

THE opinion states the case.—*Affirmed.*

*Nourse & Nourse* and *Harry Langland,* for appellant.

*Lee & Garfield* and *C. H. Pasley,* for appellee.

WEAVER, C. J.—That the appellant's case may be fairly stated, we quote the same at length from its brief filed in this court, as follows:

1. INSURANCE: failure to attach copy of application.

"This is an action upon a certificate of membership issued by a mutual aid association to plaintiff's husband, and payable to plaintiff as beneficiary.

"The petition alleges that, on the 21st day of November, 1885, the Northwestern Aid Association of Minneapolis, Minnesota, issued to J. H. Dixon a certificate of membership, promising, upon the death of insured in good standing, to pay to his wife, the plaintiff in this suit, 75 per centum of the net proceeds of one full assessment at schedule rates, upon all of the certificate holders in good standing in the association at the date of the death of insured, not, however, to exceed $2,000. That the insured paid all assessments due upon said certificate. That the assured died on the 10th day of August, 1918. That the defendant (Northwestern National Life Insurance Company), under some arrangement, the exact details of which are unknown to the plaintiff, had taken over the

insurance of the Northwestern Aid Association, and assumed and agreed to pay the full sum of $2,000 upon the certificate of that association. That plaintiff duly notified defendant of the death of insured and made proof thereof, but that defendant had refused to pay the said certificate. The petition prayed judgment in the sum of $2,000 and costs.

"The answer is in two divisions or counts, the first of which admits the issuance of the certificate of membership by the Northwestern Aid Association, agreeing to pay 75 per centum of the net proceeds of one full assessment, not, however, exceeding $2,000; that James H. Dixon, the insured, died on the 10th day of August, 1918, having paid all dues required by the certificate of membership; and that defendant was notified thereof: but denies that satisfactory proof of death was furnished, and denies all other allegations of the petition.

"The second division of the answer alleges the issuance of the certificate of membership by the Northwestern Aid Association, and avers that, at the time of its issuance, the insured, James H. Dixon, in his application for said certificate, in order to procure said insurance, represented that he was 43 years of age at his nearest birthday, when, in truth and in fact, he was 50 years of age, instead of 43. That said representation was not only made in the application, but also by the acts of the insured during all the time the certificate was in force, in that he (insured) received the contract of insurance and paid the premiums thereon to defendant and accepted receipts therefor, well knowing at the time that the contract of insurance was issued at the age of 43 years, and that the rate of premium was based upon that age, when, in truth and in fact, insured knew that he was then 50 years of age, and that the premiums at said age were much higher; that defendant was, during all of said time, ignorant of the said misrepresentation of insured as to his age. That, because of said mistake or misstatement of age, the premium charged and collected upon said certificate during all the time it was in force was

only the premium required, charged, and collected from persons 43 years of age, a premium far less than the premium required, charged, and collected from persons 50 years of age. That the Northwestern Aid Association and the defendant were both corporations organized under the laws of the state of Minnesota, with their principal places of business at Minneapolis in said state, and that said certificate of membership was issued at and from the office of the Northwestern Mutual Aid Association in Minneapolis, and was intended to be performed and, in so far as performed, it was performed in the city of Minneapolis in the state of Minnesota, and was to all intents and purposes, a Minnesota contract. That neither the application in which said misrepresentation was made nor a copy thereof was attached to the certificate of membership, and that there was no requirement of the laws of Minnesota that such application or a copy thereof should be so attached, in order to be available in a suit upon the certificate. That it is provided in the said certificate that all statements made in the application for membership are warranties, and, upon a failure thereof, the certificate of membership shall be void. That, since the death of insured and the discovery of the mistake, defendant, notwithstanding the provisions of the contract of insurance and its avoidance under said warranty, has offered to pay to the plaintiff or the person or persons rightfully entitled thereto, and is now and at all times has been ready and willing to pay the amount of insurance the premium actually paid by insured would buy at his correct age, which amount could not be determined without a reformation of the contract of insurance as to the insured's age at the time of the issuance of the certificate, and an accounting as to the amount of insurance the premium actually paid would purchase at such true age of insured.

"Upon said second count, defendant prays the court to determine the date of the birth of insured, his true age at the time the certificate of membership was issued to him, and that said certificate of membership be reformed in that

respect, and that an accounting be had of the amount of insurance that the premiums actually paid by insured would purchase at his true age, and for general equitable relief.

"Upon the filing of this answer, defendant moved to transfer the case to equity for the trial of the equitable issues so raised, which motion was, by consent, sustained. Whereupon, the plaintiff filed a general equitable demurrer to the second division of defendant's answer, based upon the ground that the facts stated in said second division of defendant's answer do not entitle defendant to the relief demanded.

"This demurrer, upon its hearing, was sustained by the court, to which defendant duly excepted, and elected to stand upon the second count or division of its answer, and brought this appeal."

Further statement is unnecessary, except to say that the certificate issued to the insured, upon which this action is brought, makes reference to an alleged application therefor, in words as follows:

"The application made by the holder hereof, and on faith of which this certificate is issued, constitute the basis of the contract between the parties hereto; the answers to the question therein are warranties; and said application and every part thereof is hereby made a part of this certificate. to the same extent and with the same effect as though it were set out herein; and, on failure of any of the warranties therein contained, this certificate shall be void."

The propositions upon which the appellant asks a reversal of the trial court's ruling on the demurrer, though stated in various forms, are readily reducible to two. First: That the contract evidenced by the policy sued upon is a Minnesota contract, and is, therefore, not subject to the provisions of the Iowa statute, Code Sections 1741 and 1819, which provide that all insurance companies organized or doing business in the state shall, upon the issue of any policy, attach to such policy or indorse thereon a true copy

of application or representations of the assured which, by the terms of the policy, are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy; and that any company or association failing so to do shall be forever precluded from pleading, alleging, or proving such application or representations, or any part thereof, in any action upon said policy. Second: That the trial court erred in holding that such statutory provision has the effect to deprive the insurer of the right to prove the fraudulent representations of an applicant for insurance in an equitable demand for reformation of the insurance contract sued upon, or to prove the same in an equitable defense to an action brought to recover insurance so fraudulently procured.

I. Does the fact that the insurance company is organized and has its home office in another state relieve it in any degree from the restrictions imposed by the Iowa statute, when sued upon a policy solicited and procured by its agents in Iowa, and delivered by it to the insured person at his home in Iowa? The Iowa statute, Code Section 1819, is, by its express words, made to apply to "all life insurance companies organized *or doing business in this state.*" No foreign insurance company or association can lawfully do business in Iowa, except with the consent of the latter; and, when doing business here, such company or association is bound by the same rules and limitations which our laws prescribe for home companies and associations engaged in like or similar business. *Weiditschka v. Supreme Tent,* 188 Iowa 183; *Nelson v. Nederland L. Ins. Co.,* 110 Iowa 600, 604; *Stanhilber v. Mutual M. Ins. Co.,* 76 Wis. 285 (45 N. W. 221); *American Fid. Co. v. Bleakley,* 157 Iowa 442; Code of Iowa, Section 1639. This rule is too well settled by statute and by precedent to justify further consideration at this time.

In soliciting this insurance in Iowa from a resident of Iowa, and in delivering its policy to the insured at his home

2. CORPORATIONS: right of foreign corporation.

in Iowa, it was doing business here, within the meaning of the statute, and its failure to attach a copy of the application to such policy exposes it, when sued in Iowa, to the same restrictions in pleading and proving its defenses which would be applicable were the insurer an Iowa corporation.

3. CORPORA-
TIONS:
foreign cor-
porations:
"doing busi-
ness in this
state."

With this question settled at the outset, we next inquire what these restrictions are. Counsel have cited us to precedents from other states, few, if any, of which are really in point. Most of them are decisions under statutes differing very materially from our own. Indeed, none of those statutes is as broad or sweeping in its terms as is ours. What our statute provides is, as we have already noted, that an insurer who neglects to comply with this provision for a copy of the application, "shall forever be precluded from pleading, alleging, or proving such application or representations, or any part thereof, or the falsity thereof, or any part thereof, in any action upon such policy."

The appellant seeks, by its answer and so-called counterclaim, to avoid every restriction found in this statute, and proposes, notwithstanding the law forbidding it, not only to allége, plead, and prove the existence of such application, but to allege, plead, and prove its falsity, and because thereof, to escape performance of its contract. We are not concerned, at this point, with the wisdom or abstract justice of the provision. Its validity is unquestionable. As has been said by this court on other occasions:

"Foreign insurance companies are not compelled to do business in this state. If they voluntarily choose to do so, however, they must submit to such conditions and restrictions as the legislature may see fit to impose." *Nelson v. Nederland L. Ins. Co.*, 110 Iowa 604.

The requirement that their policies shall have copies of the applications therefor attached or indorsed thereon is not a burdensome one; and, if they fail to observe such

simple regulation, they cannot justly complain of the consequences which the statute attaches to such neglect. Indeed, if we understand their argument, counsel for appellant do not seriously contest this conclusion, so long as the action upon the policy is at law, but they advance the theory that, by the expedient of raising an equitable issue, the statutory provision is no longer applicable. To that theory of the law we now turn our attention.

II.   We are cited to no statute or precedent sustaining the idea that an insurer which is being sued upon a policy to which it has neglected to attach a copy of the application, may plead and prove fraud or misrepresentation in such application in spite of the statutory prohibition thereof, if only it couples with such defense a prayer for equitable relief by reformation of the contract. Under our statute, the insurer is forever precluded from alleging, pleading, or proving such claimed fraud or misrepresentation in *any* suit upon the policy. Surely, this is an "action upon the policy," and none the less such whether the issue joined be legal or equitable. This very obvious suggestion is sought to be avoided by saying that the so-called equitable issue is raised by the second division of the answer, which is in the nature of a counter petition, and should be treated as an independent action, and therefore not within the effect of the statute. The distinction thus drawn is too unsubstantial to justify our approval. The suit was brought upon the policy, and its character as such is in no manner changed by the defendant's pleading. That pleading has no other purpose than to defeat the action on the policy, and to accomplish this by alleging, pleading, and proving the contents of the application, and the alleged falsity of its statements. Its character and purpose are not changed by attaching thereto a prayer for equitable relief. Indeed, it needs but a glance to demonstrate that the second division of defendant's answer states no case for equitable consideration or equitable relief. Assuming, for the purposes of this opinion, that the claim put forth by appellant is literally true, and that the application falsely states

Dixon's age at 43 years, when, in truth, he was 50 years old, what is there in it all which calls for a reformation of the contract? In such case, the appellant had only to obey the statute, and attach a copy of. the application to the policy, to have a complete and perfect defense to plaintiff's action at law on the policy; or if, as counsel seem to concede, the defense would be partial only, the issue would still be legal, and not equitable, and the facts from which the recoverable amount could be ascertained would be competent and admissible evidence, without resort to equity. But the insurer elected to withhold the required copy of the application, or, to say the least, it neglected to comply with the statute, and thus, by its own act, made itself and its defense subject to the resulting statutory restriction, which precludes it from "alleging, pleading, or proving" any fraud or misrepresentation in such application. After it has voluntarily placed itself in that position, equity cannot relieve it from the effect of the statute which it disregarded.

III. Counsel on either side have given considerable attention to the question whether the statute relating to the effect of an insurer's failure to attach a copy of the application to its policy pertains solely to

**4. INSURANCE: failure to attach copy of application.** matters of remedy, or to the existence or validity of the contract. The answer to this inquiry would seem to be found in the statute itself, which expressly provides that the omission to attach the application to the policy "shall not render the contract void;" but that, if any company or association does fail in this respect, "it shall be forever precluded from pleading, alleging, or proving such application or representations, or any part thereof, or the falsity thereof, or any part thereof, in any action upon such policy." In other words, the statute expressly limits its effect to matters of pleading and proof. It was so held by us in *Nelson v. Nederland L. Ins. Co.*, 110 Iowa 604, where we said of another section of the same statute that the rule there provided "so evidently relates to procedure that discussion of the point is not required."

In the case of *Rauen v. Prudential Ins. Co.,* 129 Iowa 725, 734, we considered at some length the nature and effect of this statute. We there said:

"It may be admitted, for the purposes of this case, that the fraud pleaded was sufficient to avoid the policy, if the appellant had put itself in position to make use of the defense; but, failing to attach a copy of the application to the policy, it waived its right to take issue upon the application or any part of it. * * * As we have already suggested, it is within the power of the legislature, not only to impose conditions upon the right of insurance corporations to do business in the state, but to regulate the form and substance of all insurance contracts, and prescribe what conditions may or may not be imposed upon the insured. When, therefore, it is enacted that all representations and warranties upon which the company proposes to rely or insist shall be attached to or embodied in the policy, the state is not exceeding its recognized authority; and the company failing to comply with the provision must be conclusively held to have elected to rely upon the contract as contained in such policy, without reference to any representation or warranty not contained in that instrument. The denial of the right to plead or prove such extrinsic matter is not, in any proper sense, a 'penalty' for failing to comply with the statute; for the company has a perfect right to waive or forego any advantage it could derive from an embodiment of the application in the policy."

Such, also, is the view expressed by the Wisconsin court in *Stanhilber v. Mutual M. Ins. Co.,* 76 Wis. 285 (45 N. W. 221), and by the Minnesota court in *Wheelock v. Home Life Ins. Co.,* 115 Minn. 177 (131 N. W. 1081), where, in reference to a statute requiring the application to be attached to or indorsed upon the policy, the opinion says:

"The provision is clearly remedial, designed to prevent technical defenses. As we have construed it, the law will have the effect designed, and works no hardship on the insurer. Compliance with the provision is very simple, and gives the insurer full protection against fraudulent state-

ments of material facts made by the insured to the agent or to the examining physician. All that is necessary is to have such statements in the application, and attach a copy of the application to the policy. We do not hold that this provision is applicable where an insurance company is induced by fraud to issue a policy, where such fraud consists of acts or representations on the part of the insured that are not of a nature that are properly or usually in the form of statements in a written application. We do hold that statements by the applicant as to his history, habits, and health, such as are ordinarily asked by the examining physician, and questions and answers reduced to writing, signed by the applicant, whether such statements are made 'in the absence of fraud' or not, must, in order to avoid the policy, be contained in a written application, and such application must be attached to or indorsed on the policy."

IV. Appellant cites and relies upon Section 11 of Chapter 348 of the Acts of the Thirty-eighth General Assembly, reading as follows:

"In all cases where it shall appear that

5. INSURANCE: understating age: amount recoverable.  the age of the person insured has been understated in the proposal, declaration or other instrument upon which a policy of life insurance has been founded or issued, then the amount payable under the policy shall be such as the premium paid would have purchased at the correct age."

This act does not expressly, or by implication, repeal the statute which we have been discussing. By its terms it applies to cases where *it shall appear* that the age of the person insured has been misstated in the proposal, declaration, or other instrument on which the policy has been granted. In other words, where such misstatement of age is made to appear by proper plea and proof, the recovery shall be limited to the amount of insurance which the premium paid would have purchased at the correct age. It does not attempt, however, to prescribe under what circumstances such defense may be pleaded or proved, or how it may be waived or lost. This had already been done by

Code Section 1819, which, as we have seen, permits such defense only where the insurer has attached to its policy a true copy of any application or representation made by the insured which, by the terms of such policy, are made a part thereof, or of the contract of insurance, or referred to therein, or which "may in any manner affect the validity of the policy." The later statute does no more than to fix the measure of the plaintiff's recovery in cases where the defense of misrepresentation of the age of the insured is duly pleaded and proved; and it can be duly pleaded and proved only when the insurer has preserved the right so to do, by attaching to its policy a copy of the application or representation.

What we have said sufficiently disposes of all pertinent questions raised by the appeal. We find no reversible error in the record, and the ruling of the trial court is—*Affirmed.*

LADD, STEVENS, and ARTHUR, JJ., concur.