## SOUTHWESTERN SURETY INS. CO. v. HICO OIL MILL. (No. 180-3210.)

(Commission of Appeals of Texas, Section A. March 30, 1921.)

1. Insurance ⊗134(2)—Questions asked employer and his answers not within provision of statute requiring copy of application to accompany policy.

Questions asked the owner of an oil mill seeking to bond an employé as to whether the employé was to render a trial balance each month and be checked by an auditor once a year, etc., and the answers to such questions, *held* not within the provision of Rev. St. 1911, art. 4951, requiring copy of application to accompany the policy; the application having been made by the employé.

2. Insurance ⊗134(2)—Representations by employer seeking to bond employé must be attached to policy.

In view of Rev. St. 1911, arts. 4947, 4948, representations made by the owner of an oil mill seeking to bond an employé that such employé was to render a trial balance each month, etc., having been made a part of the contract with the surety company, and having been contained in questions asked and answers given thereto, were within article 4951, providing every contract of insurance shall be accompanied by a written photographic or printed copy of application as well as a copy of all questions asked and answers given thereto.

3. Insurance ⊗650—Surety company failing to attach copy of questions asked employer to policy cannot defend on ground of false representations.

Defendant surety company, having failed to accompany the bond of an employé sued on by the the employer with a copy of the questions asked the employer and his answers given thereto, in view of Rev. St. art. 4951, cannot prove its defense of false answers or representations made by the employer, whether such misrepresentations were made to induce the issuance of the contract or were such as to form part of the contract.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by the Hico Oil Mill against the Southwestern Surety Insurance Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (203 S. W. 137), and defendant brings error. Judgments of the trial court and Court of Civil Appeals affirmed.

Jno. T. Suggs, of Denison, Copps, Cantey, Hanger & Short, of Fort Worth, and Wm. L. Evans, of Ranger, for plaintiff in error.

C. L. McCartney, of Brownwood, and McLean, Scott & McLean, of Fort Worth, for defendant in error.

TAYLOR, P. J. H. M. Scales was for several years prior to September 10, 1911, in the employ of the Hico Oil Mill. C. H. Bencini was the sole owner. On the date mentioned Scales applied to the Southwestern Surety Insurance Company for fidelity bond in the sum of $5,000. The purpose of the bond was to protect the oil mill against loss resulting from acts of fraud or dishonesty on the part of Scales amounting to larceny or embezzlement.

The application for the bond was made by Scales. Inquiry was made therein concerning the business carried on by the oil mill, who would pay the premium on the bond, the character of Scales' employment, the salary he was to be paid in the position to be thereafter assumed, as to what property he owned, the amount of his indebtedness, as to his personal habits, as to his previous employment, and who his employers were, his reasons for leaving such employments, etc. All of the inquiries were directed to the applicant, which, together with his answers thereto, were signed by him, and him only.

After receiving the application, and before issuing the bond, the company addressed a letter to the oil mill seeking further information concerning the applicant, stating that Scales had already applied for the bond. The letter was written upon what was denominated an employer's statement, and contained a long list of questions which were answered by Bencini. The inquiries in the statement sought to ascertain to whom the bond was to be payable, who was to pay the premium, what position Scales was to hold during the term of the bond, whether he was to have supervision of the books and the handling of the cash, and the amount of money he would likely have in his custody at any one time. Inquiry was made also concerning his authority to pay out the cash, his manner of doing so, where he would be required to deposit the money in his custody, etc.

The opening paragraph of the statement

---

⊗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

blank sent to Bencini stated that an application had been made to the company by Scales for the bond referred to. It contained no further reference to the application, nor did it incorporate it as a part of the statement. The closing paragraph was in effect that the answers given were to be taken as conditions precedent, and as the basis for the bond applied for.

The statement was filled out by Bencini and returned. The company on receipt thereof executed and delivered the bond as applied for.

The bond recited, among other things, that a statement in writing had been delivered to the company by the employer setting forth his official position as an employé, the nature and character of his duties and responsibilities, the safeguards and checks to be used upon him in the discharge of his duties, and other matters. The bond by express reference made the representations contained in Bencini's statement a part of the bond.

During the term of the bond the oil mill sustained a pecuniary loss through dishonesty on the part of Scales. This suit was filed by the oil mill, defendant in error, against the surety company, plaintiff in error, to recover upon the bond the loss thus sustained.

The company defended on the ground that false and fraudulent representations were made in the employer's statement furnished it by Bencini. Bencini had represented, among other things, in his answers to the questions in the employer's statement, that Scales was to render a trial balance to the oil mill each month, and be checked by an auditor once a year; that his accounts had been last examined about the middle of June, 1911, and were at that time in every respect correct, and proper securities and funds on hand to balance, that there had not been any shortage due the mill by Scales, and that he was not at that time indebted to it. The surety company alleged that the representations were untrue in that at the time the bond was executed Scales was indebted to Bencini in large sums of money on open account, by promissory note, and otherwise; that Scales' accounts were not correct at the time stated, and securities and funds were not on hand to balance; that the statements and representations made by Bencini were false and fraudulent representations of material facts inducing the company to execute the bond, and of such character as to vitiate and invalidate the bond; that the same did not become and never was a binding obligation upon the company, and was from its inception without force and effect.

The case was tried upon an agreed statement of facts. One stipulation was that sufficient facts existed as alleged by the company to constitute a complete avoidance of liability, provided the employer's state-

ment above referred to was admissible in evidence, and could be considered by the court. It was stated in the agreement that Bencini personally did not know the answers in the employer's statements were untrue at the time he signed the same, but that he was legally chargeable with such knowledge.

Article 4951, R. S. 1911, in force at the time of the issuance of the bond sued on, provides, among other things, that—

"Every contract or policy of insurance issued or contracted for in this state shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto."

The company sought to prove the averments of its answer by offering in evidence Bencini's statement containing the questions asked him and his answers thereto. Defendant in error objected to its admission on the ground that the surety company failed to comply with the terms of article 4951 in not causing the bond when issued to be accompanied by a written, photographic, or printed copy of such statement. All other objections to its admissibility were waived by agreement. The trial court refused to admit the statement, and rendered judgment for defendant in error. The Court of Civil Appeals affirmed the judgment. 203 S. W. 137.

In the view we have taken of the case it is not necessary to decide whether the facts set up by the surety company constitute a good defense to the suit. It is necessary to decide only whether the trial court and Court of Civil Appeals were in error in holding that the employer's statement was inadmissible on the ground urged in defendant in error's objection.

The determination of this question involves two inquiries: First, is Bencini's statement within the provisions of article 4951? And, second, if within the provisions of the statute, is the effect of plaintiff in error's failure to comply with its requirements in the particular stated such as to render the statement inadmissible?

Defendant in error contends that a copy of the employer's statement is not within the provisions of article 4951, urging: First, that the statement is not a part of the application; and, second, that the questions asked and answers thereto, referred to in article 4951, are questions and answers contained in the application only.

[1] We agree that Bencini's statement was not a part of the application made by Scales. Its nature and purpose forbid the conclusion that it was. It had been filled out, signed, and sent in before the company communicated with Bencini. The evident purpose of the inquiry directed to him was for the purpose of securing information to be used in determining whether the bond

applied for should be issued. Clearly the questions asked Bencini and his answers thereto are not within that provision of the statute requiring a copy of the application to accompany the policy.

Are the questions and answers referred to in article 4951 those contained only in the application?

Articles 3096aa and 3096bb of the amendment, of which article 4951 is a part (Gen. Laws 1903, p. 94), brought forward in the Revised Statutes as articles 4947 and 4948, respectively, throw some light upon this question. They are therefore set out as follows:

"Art. 3096aa. That any provision in any contract or policy of insurance issued * * * in this state, which provides that the answers or statements made in the application for such contract, or in the contract of insurance, if untrue or false, * * * shall not constitute any defense to any suit brought upon such contract, unless it be shown * * * that the * * * thing misrepresented was material to the risk."

"Art. 3096bb. * * * No defense based upon misrepresentations made in the applications for, or in obtaining or securing the said contract, shall be valid unless the defendant shall show * * * that within a reasonable time after discovering the falsity of the misrepresentations so made, it gave notice to the assured, * * * that it refused to be bound by the contract," etc.

Articles 3096cc, 3096dd, and 3096ee have no bearing on the questions under consideration.

Article 3096eee, the concluding article of the amendment, is article 4951 of the 1911 revision, and is the article the provisions of which are invoked by defendant in error in objecting to the admission in evidence of Bencini's statement. The provisions referred to declare what written, photographic, or printed copies shall accompany the policy when issued, and are set out in full in the statement of the case.

The title of the amendment furnishes distinct aid in arriving at the legislative purpose in including in the amendment the provisions of article 4951. Its provisions as bearing upon this discussion are therefore set out as follows:

"An act to amend article 58, Revised Civil Statutes, relating to the subject of insurance, by adding thereto chapter 5, embracing articles 3096aa, 3096bb, 3096cc, 3096dd, 3096ee, and 3096eee, providing that no insurance contract shall be held void because of immaterial misrepresentations made in the application therefor, or in the contract of insurance, and providing conditions upon which a defense may be made upon the ground of misrepresentation in the application or in the contract. ' * * * *"

A review of that part of the body of the amendment set out above, in connection with the title, makes apparent the relation between the photographic copies referred to in article 4951 and the misrepresentations referred to in the title and in article 3096aa and 3096bb, respectively.

The purpose of the Legislature, as declared in the title, was to provide conditions upon which a defense might be made to a suit on a contract of insurance on the ground of misrepresentations made in the application or in the contract. Such misrepresentations are referred to in article 3096aa as false answers or statements made in the application or in the contract, and in article 3096bb as misrepresentations made in the application for or in obtaining or securing the contract.

In furtherance of the purpose of providing conditions upon which a defense could be made, the Legislature provided that certain written, photographic, or printed copies should accompany the policy. It was evidently in the mind of the Legislature that, inasmuch as the misrepresentations prescribed were made available in defense to the insurer, the insured should be provided with a copy thereof on the issuance of his policy. No mention is made in the title of accompanying the policy with copies of representations of any kind, and a provision in the body of the amendment so stipulating is within the scope of the title only under the view that it was included as a safeguard to the insured incident to the defense provided.

[2] It is fair to assume, therefore, that the Legislature intended that the copies referred to should be such as would include the misrepresentations referred to in articles 3096aa and 3096bb, respectively. The language of article 4951, requiring a copy of the application as well as "a copy of all questions asked and answers given thereto" to accompany the policy, is broad enough to include representations made either in the application or in the contract. The representations made by Bencini were made a part of the contract. They were contained in "questions asked and answers given thereto," and were therefore within the quoted provision of the article.

Is Bencini's statement admissible in evidence, in view of the fact that a copy thereof did not accompany the bond when issued?

Joyce on the Law of Insurance, vol. 1, § 190d, states that statutes of the character of article 4951 are intended to protect the policy holder by requiring the insurer to place in his hands written evidence of all the terms, conditions, and representations to be incorporated or embodied in the policy.

Prior to the enactment of the amendment, it was permissible for insurance companies to make representations not contained in the policy, or accompanying it, a part thereof by reference. Goddard v. Insurance Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1; Seiders v. Life Ass'n, 93 Tex. 194, 54 S. W. 753. Such representations could be retained exclusively by the company issuing the policy. The insured persons, on receipt of their poli-

cies unaccompanied by such instruments and statements, might fail to correct errors therein that otherwise would be corrected. In consequence of misrepresentations and incorrect statements made and not corrected —whether for lack of opportunity on the part of the insured, or for other reasons— policy obligations were avoided through defenses based thereon. Equitable Life Ins. Co. v. Hazlewood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893; Life Ass'n v. Parham, 80 Tex. 519, 16 S. W. 316; Seiders v. Life Ass'n, supra; Kansas Mutual Life Ins. Co. v. Pinson, 94 Tex. 553, 63 S. W. 531; Hutchison v. Hartford Life & Annuity Ins. Co. (writ denied) 39 S. W. 325.

The Legislature, as a part of its plan to provide conditions on which misrepresentations could be interposed as a defense to suits on insurance policies, and to remove some of the harshness of the law as it then existed as affecting policy holders, required that the copies specified in article 4951 should accompany the policy when issued. In view of the fact that injury could result to the policy holder as a result of noncompliance with such conditions on the part of the insurer, the requirement was doubtless intended to be mandatory. Lewis' Sutherland on Statutory Construction, § 269.

Article 4951 does not expressly provide a penalty for failure to attach to the policy a copy of the application, etc. This fact is stressed in plaintiff in error's contention that the statement is admissible, regardless of whether the surety company failed to attach a copy thereof to the policy.

In most of the acts of a similar character the penalty for such failure is expressly provided (note 14 Ann. Cas. p. 1094), usually to the effect that a company failing to comply with the requirement shall be precluded from alleging or proving the misrepresentations relied upon as a defense to a suit on the policy. The New York statute carries no express penalty for such failure. However, the Court of Appeals of that state, in construing it, held that a defense based on misrepresentations, where there had been a failure to include them in the policy when issued, was not good. The basis of the holding was that the insurer failed to comply with the statute. Archer v. Equitable Life Assur. Co., 218 N. Y. 18, 112 N. E. 433. The Missouri statute enacted also without an express penalty has been similarly construed. Schuler v. Metropolitan Life Ins. Co., 191 Mo. App. 52, 176 S. W. 274.

[3] A contrary holding in construing article 4951 would thwart one of the vital purposes in the mind of the Legislature in its enactment, to wit, to afford the policy holder an opportunity to examine and correct any misrepresentations made the basis of the issuance of his policy. Furthermore, if the mandate of the statute can be disregarded with impunity, and the insured be injured thereby, he does not receive the full protection the Legislature intended to accord him. The penalty for noncompliance follows in consequence of the mandatory character of the provision, and is, in this instance, that the company, having failed to accompany the bond sued on with a copy of questions asked Bencini and his answers given thereto, cannot prove its defense by the representations made therein.

Plaintiff in error argues that the misrepresentations made the basis of its defense are not within the statute, because they were misrepresentations fraudulently made to induce the issuance of the contract; that a distinction should be recognized between a defense based upon misrepresentations of such character and misrepresentations which form a part of the contract. Authority is cited from the courts of other states recognizing such a distinction in construing acts of a somewhat similar nature. Johnson v. American National Life Ins. Co., 134 Ga. 800, 68 S. E. 731; Bowyer v. Continental Casualty Co., 72 W. Va. 333, 78 S. E. 1000; Carrigan v. Massachusetts Benefit Ass'n (C. C.) 26 Fed. 230.

The Legislature, in requiring that the policy be accompanied by copies of representations made in securing it, made no exception to the requirement imposed, based upon the purpose for which the representations were made. The representations interposed in defense herein, whether viewed as fraudulently made to induce the issuance of the policy, or as a part of the policy, are within the provision of article 4951 requiring that the policy be accompanied by a copy of all questions asked and answers given thereto.

Bencini's statement, in view of the fact that it did not accompany the policy sued on, is not admissible for the purpose of establishing the defense alleged.

We recommend that the judgments of the trial court and Court of Civil Appeals be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.