**AMERICAN SURETY CO. OF NEW YORK v. WEST STATE BANK.   (No. 620.)**

Court of Civil Appeals of Texas. Waco.
March 8, 1928.

Rehearing Denied April 5, 1928.

**1. Insurance ⬚655(3)—Surety, sued on fidelity bond, cannot prove alleged false statements in application, where application is not attached to bond (Rev. St. 1925, arts. 5044 and 5049).**

Under Rev. St. 1925, arts. 5044 and 5049, surety, in suit on fidelity bond, could not prove defense of alleged false or fraudulent statements made in application, where such application was not attached to the fidelity bond.

**2. Insurance ⬚655(3)—Surety, sued on fidelity bond, cannot prove fraudulent concealment of facts by employer, where application was not attached to bond (Rev. St. 1925, arts. 5044, 5049).**

Under Rev. St. 1925, arts. 5044, 5049, surety, sued on fidelity bond, is precluded from proving that employer failed voluntarily to disclose facts within his knowledge material to the risk, or fraudulently concealed facts from surety, where application for bond, which included certificate of employer, was not attached to the bond.

**3. Evidence ⬚250—Declarations or admissions of principal, becoming part of res gestæ, are evidence against surety.**

Declarations or admissions made by principal in the course of the performance of a business for which a surety is bound, so as to become part of the res gestæ, are evidence against the surety.

**4. Evidence ⬚250—Entries made by employee covered by fidelity bond in ordinary discharge of his duty are admissible against surety.**

Entries made by an employee covered by a fidelity bond in books of his employer, kept by him in ordinary discharge of duties of his employment, are admissible against surety as admissions or declarations tending to establish default or defalcations of employee.

**5. Evidence ⬚376(1)—Ledger sheet and passbook prepared by bank employee in regular course of his duties held admissible as against objection that they were not properly authenticated.**

In action on fidelity bond for defalcations of bank employee, misplaced ledger sheet found after employee's discharge, and a passbook, which were prepared and entries made in them by employee in regular course of duties as an employee of the bank, *held* properly admitted as against objection that they were not properly authenticated or shown to be correct.

Appeal from District Court, McLennan County; Sam R. Scott, Judge.

Action by the West State Bank against the American Surety Company of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

Spell, Naman & Penland, of Waco, for appellant.

Sleeper, Boynton & Kendall, of Waco, for appellee.

GALLAGHER, C. J. The West State Bank, appellee herein, sued the American Surety Company of New York, appellant herein, for $1,541.59 upon a fidelity bond executed by said company as surety for one August J. Peters, an employee of said bank. Appellee alleged that said Peters embezzled, wrongfully abstracted, and willfully misapplied to his own use and benefit the sum sued for. Appellant defended by a general denial and an allegation that said Peters was addicted to gambling; that he had, prior to the issuance of said bond, without authority, signed the names of depositors to checks on said bank, and had obtained money thereon from said bank, and had embezzled, wrongfully abstracted, and willfully misapplied the money so obtained; that, by reason of such facts, he was dishonest, morally delinquent, and utterly unfit for a position of trust. Appellant further alleged that the issuance of said bond was procured by appellee, acting through its president; that all said facts were known to appellee's said president; that he had abundant opportunity to disclose said facts to appellant and to its agent taking the application for said bond prior to the issuance thereof; that it was his duty to disclose the same, and all the same, to appellant's said agent, and that he wholly neglected and failed to discharge such duty; that none of said facts were known to appellant, and that, if they had been known, it would not have become surety on such bond; that by reason of the premises said bond never became a valid and binding obligation, but was wholly void, and of no force and effect.

The bond sued on was dated September 1, 1924, and was by its terms to remain in force for one year. Appellee's president applied to appellant's agent, who had an office in the bank at the time, for the issuance of the same. Some time during the summer preceding the issuance of said bond, appellee's said president discovered that said Peters, who was about 20 years of age at the time, and employed as a bookkeeper in said bank, had been signing his mother's name to checks on her account in said bank, withdrawing the amount of such checks in money therefrom and appropriating the same. Such checks amounted in the aggregate to between $400 and $500. Appellee's said president immediately took the matter up with young Peters' mother, who finally consented to recognize said checks as proper charges against her account. During the conversation with reference thereto, he advised her that, if she refused to recognize said checks,

trouble to her said son would probably result. He testified in that connection that he had in mind making a claim on a fidelity bond issued by another company as surety for said Peters, which bond was in force at that time.

Mrs. Peters testified that he promised in that connection to have a conversation with young Peters about his conduct, and to reprove him therefor; to raise his salary; and to arrange for him to make a monthly deposit to her account until the amount of money so withdrawn was returned. Peters continued in the employ of appellee until April 13, 1925, when he was discharged for gambling. He immediately disappeared, and his whereabouts were unknown at the time of trial. Shortly after his discharge, it was found that the account of his grandmother, Mrs. Skopic, had been removed from the active ledger, and that, when the same was restored thereto, the books were out of balance in the sum of $1,541.59, and a shortage of that amount existed in the cash on hand in said bank. The evidence is sufficient to sustain a finding by the trial court that said sum was embezzled, wrongfully abstracted, and willfully misapplied by said Peters to his own use and benefit. It was agreed on the trial of the case that appellant's agent, at the time he received the application for said bond, did not know of any prior default or delinquency on the part of said Peters, and that, if he had known the facts concerning the unauthorized drawing of checks by said Peters upon his mother's account and his appropriation of the proceeds thereof, he would not have accepted said application. It was also agreed that appellant's agent in Dallas who issued said bond would not have issued the same if he had known any of said facts. The policy sued on was introduced in evidence, and did not have attached to it any application therefor, nor was any reference made therein to such application. Appellee, for the purpose of showing that said policy was issued in pursuance of an application therefor in writing signed by said Peters, and that the same included a "Certificate of Employer," introduced said application in evidence. It appeared therefrom that the same was made on a regular form used by appellant, and the same included as a part thereof a certificate signed by appellee as follows:

"The accounts of the applicant for this bond were last examined on the 30th day of July, 1924, and found correct in every respect. He has been in the service of the employer since the 20th of July, 1923, and has never to my knowledge been in arrears or default.

"From all that I know and have heard, I believe him to be entitled to confidence and qualified to discharge the duties of the position named in the within named application. Proper accounts are kept and adequate examinations of his transactions will be made."

The case was tried before the court and judgment rendered in favor of appellee against appellant for the sum of $1,541.59, the amount sued for. Said judgment is here presented for review.

### Opinion.

[1] Appellant's first proposition presented as ground for reversal is that, under the undisputed facts in this case, the trial court should have rendered judgment in its favor on the ground that appellee, when it had an opportunity to do so, withheld and failed to disclose facts material to the risk insured against by the policy sued on. The Legislature of this state in 1903 (General Laws, p. 94) enacted a comprehensive law prescribing rules to govern in determining the validity and enforceability of contracts of insurance when sought to be avoided by the insurer on the ground of fraud by the insured in securing the same, and the conditions upon which such defense might be made. According to the provisions of said act, no insurance contract thereafter made can be avoided on the ground of misrepresentations in the application therefor or in obtaining and securing the same, unless the insurer, within a reasonable time after discovering the falsity of the representations so made, gives notice that it refuses to be bound by such contract or policy. Said act further provides that every contract or policy of insurance shall be accompanied with a copy of the application therefor and of all questions asked and answers given thereto. The provisions of said act above referred to were, without material change, incorporated in the Revised Statutes of 1911, and retained in the Revised Statutes of 1925 as articles 5044 and 5049 thereof. The provisions of said article 5049 were considered in Southwestern Surety Insurance Co. v. Hico Oil Mill (Tex. Com. App.) 229 S. W. 479, and construed to be mandatory and conditions precedent to any defense based on alleged false or fraudulent statements made in the application or in securing the contract or policy of insurance. See, also, National Surety Co. v. Murphy-Walker Co. (Tex. Civ. App.) 174 S. W. 997, 1004; Southern Surety Co. v. Citizens' State Bank (Tex. Civ. App.) 212 S. W. 556, 558, 559; Southern Insurance Co. v. Nicholson (Tex. Civ. App.) 292 S. W. 569, 570; National Life & Accident Co. v. Love (Tex. Civ. App.) 282 S. W. 829; National Live Stock Insurance Co. v. Gomillion (Tex. Civ. App.) 178 S. W. 1050, 1051.

[2] Appellant apparently concedes that the rule announced in that case is the established law of this state. It seems to recognize that it is cut off from urging such a defense because it failed to attach to the policy sued on the application therefor. Abandoning any such contention, it seeks to defeat a recovery by appellee on the policy sued on, on the

ground that the facts in evidence imposed an imperative legal duty upon appellee to voluntarily disclose all that was known to its officers concerning the unauthorized action of Peters in signing his mother's name to checks on her account and appropriating the moneys withdrawn from the bank thereon. Whether the surety in a fidelity bond seeks to avoid liability thereon on the ground of false representations affirmatively made, or on the ground of failure on the part of the insured to voluntarily disclose facts within his knowledge material to the risk, his defense is based on an allegation of fraud perpetrated by the insured. 12 R. C. L. p. 305, § 66. Our Supreme Court, in Screwman v. Smith, 70 Tex. 168, 173, 7 S. W. 793, said that, in order for a surety to defeat liability on a bond on the ground that he was not informed of facts known to the assured, it should be shown that there was a fraudulent concealment of facts material for him to know. Our statute deals with the question of affirmative representations, and requires that they shall be material to the risk, and that, to be available as a defense, if false, a copy thereof must accompany the policy.

The statute clearly applies and determines the rights of parties when inquiry is actually made and fully answered, regardless of whether such answer is false or not. It is the duty of the insured, when inquiry is made, to answer the same fully and fairly as he understands the facts on the points inquired about to exist. If he does so, no duty to make a voluntary disclosure can arise. Such duty arises only when no inquiry on the point at issue is made, and when it appears to the insured that the insurer, apparently relying on his failure to make any disclosure as an implied representation that there is no material fact to be disclosed, is about to enter into the contract or issue the policy, when he would not do so if the facts so withheld or concealed were known to him. No such case is presented here, and we need not determine whether such defense would be available, notwithstanding our statute, if no representations were made in the application or otherwise, and no questions asked or answered in the negotiations resulting in the issue of the contract or policy of insurance. Appellant, by failing to attach to the policy sued on or to accompany the same with a copy of the application made therefor, including the certificate of employer, which formed a part thereof, is precluded from asserting as a defense thereto that any representations therein made were false or fraudulent, and from asserting that the real facts about which such representations were made differed therefrom and were fraudulently concealed from it. Appellant's said proposition is overruled.

[3-5] Appellant presents as ground for reversal the action of the court in admitting in evidence over its objection a certain sheet from appellee's loose-leaf ledger, showing Mrs. Skopic's account to and including December 6, 1924, and a balance due her at that time of $1,703.54, which sheet, in connection with the passbook hereinafter referred to, was used as a basis for calculating the amount due her. Appellee offered testimony in connection with said sheet showing that the same was from its regular individual ledger kept by it in the ordinary course of its business; that the entries made thereon had been made by Peters, its regular bookkeeper in charge of said sheet, and two other employees of the bank; that the entries made by the other employees were correct; that up to the date of the last entry thereon its books had been balanced daily, and no error discovered. At the time of trial, Peters, as before stated, was absent, and his whereabouts unknown, and Mrs. Skopic was dead. Appellant's objection to the introduction of said sheet was, in substance, that the same had not been proved to be correct and to show the actual balance due Mrs. Skopic on that date. The gist of said objection, in view of the testimony above recited, therefore seems to be that the entries made by Peters were not proved by specific testimony to be correct. Peters being absent, the correctness of entries made by him in the books of the bank in the regular course of his duties as one of its bookkeepers could be proved, like any other fact, by circumstances. We think the testimony above recited, in connection with the other circumstances in evidence, was sufficient to show, prima facie at least, that the entries made by him on said sheet were correct. It has been held that declarations or admissions made by a principal in the course of the performance of the business for which a surety is bound, so as to become a part of the res gestæ, are evidence against the surety Barry v. Screwmen's Ass'n, 67 Tex. 250, 255, 3 S. W. 261; Keowne v. Love, 65 Tex. 152, 158; Lasater v. Purcell Mill & Elevator Co., 22 Tex. Civ. App. 33, 54 S. W. 425, 428 (writ refused); Brite v. Atascosa County (Tex. Civ. App.) 247 S. W. 878, 881.

While fidelity bonds are regarded as contracts of indemnity or insurance and so-called sureties thereon held liable as primary obligors, the rule just recited has been applied in determining the admissibility of admissions or declarations tending to establish the default or defalcation of the employee, and entries made by the employee in books of his employer kept by him in the ordinary discharge of the duties of his employment are admissible as such admissions. American Indemnity Co. v. W. C. Munn Co. (Tex. Civ. App.) 278 S. W. 956, 957, 958 (writ refused); Webb v. Smith (Tex. Civ. App.) 288 S. W. 624, 626, and authorities there cited. Appellant also as a part of the same proposition presents as ground for reversal the action of

the trial court in admitting in evidence over its objection a partially filled sheet from its loose-leaf ledger, beginning with the balance of $1,703.54 on December 6, 1924, and showing deposits to her credit in said account and withdrawals therefrom to and including April 6, 1924, and a balance in said account in her favor on that date of $1,541.59. The testimony disclosed that this sheet was found in the ledger files of appellee, but not at its proper place, several months after the discharge of Peters; that it was prepared, and the entries thereon made, by him; that on or about May 26, 1925, a check on Mrs. Skopic's account was presented for payment, and that at that time the only ledger sheet on file in its proper place was the one showing said balance of $1,703.54 on December 6, 1924; that appellee's cashier, using said balance of $1,703.54, on December 6, 1924, as a basis, from deposit slips and checks on file, prepared a statement of Mrs. Skopic's account down to and including April 6, 1925, which statement showed a balance to her credit at that time of said $1,541.59, the same balance shown by said partially filled sheet. Appellant's objection to the introduction in evidence of said partially filled sheet was that it was not properly authenticated, and that appellee's cashier, who testified to finding the same and to having prepared the statement aforesaid, did not know of his own knowledge that the items recorded therein were correct.

Appellant also presents in the same proposition as ground for reversal the action of the court in admitting in evidence, over its objection, Mrs. Skopic's passbook made for her by Peters at the direction of appellee's cashier, which passbook also showed the state of her account on December 6, 1924, and thereafter to and including April 6, 1925. It seems that said passbook not only contained entries of deposits made by appellee's employees, but also contained entries made by them of all withdrawals by check. According to the original ledger sheet above referred to, her account was in balance on August 21, 1924, at which time she made a deposit. On November 13, 1924, she made a $1,000 deposit, which was received by appellee's cashier, at which time she complained that she had no passbook. Appellee's cashier then instructed Peters to prepare a passbook from its books, and the passbook so prepared by him corresponded with said ledger sheet down to and including the deposit made with the cashier on that day. Nothing was withdrawn from her account until some time in February, 1925. All other entries in said passbook prior to the discharge of Peters, except the one made by the cashier on November 13, 1924, were made by Peters in the regular course of his duties as an employee of the bank. Appellant's objection to the intro-

duction of said passbook was that it was not properly authenticated, and that appellee's cashier, who identified it, did not know of his own knowledge that the entries thereon were correct. We think both the misplaced ledger sheet and Mrs. Skopic's passbook so prepared and kept were properly admitted in evidence, for the reasons and under the authorities above recited.

We have carefully considered the other propositions presented as ground for reversal, and are of the opinion they should be overruled.

The judgment of the trial court is affirmed.