## MARYLAND CASUALTY CO. v. CRESCENT VALLEY CREAMERY.

### No. 10317.

Court of Civil Appeals of Texas. Galveston.

Feb. 26, 1937.

Rehearing Denied April 8, 1937.

R. H. Mercer, of San Antonio, for appellant.

R. J. Waldeck and H. W. Wallace, both of Cuero, for appellee.

CODY, Justice.

Appellee, a corporation domiciled at Cuero, brought this suit upon a $2,500 fidelity bond issued by appellant February 4, 1932, to insure the honesty of appellee's butter salesman, Amos L. Butler, in the handling of appellee's butter, and the money collected from its sale, in San Antonio. Appellee was given judgment for the sum of $625.86, being the amount claimed by appellee to. have been by Amos L. Butler collected from sales of butter, while the bond was in effect for which he failed ever to account. The case was tried without a jury; neither findings of fact nor conclusions of law have been filed.

Appellant contends that the relationship of master and servant, or employer and employee, did not exist between appellee and Amos L. Butler; and that he at no time had any of appellee's butter products or money collected therefrom in his possession, and never fraudulently embezzled, or misapplied to his own use, appellee's money; that during the time in question appellee did not ship its butter to Amos L. Butler, individually, but shipped it all to Amos L. Butler, Inc., of which Amos L. Butler was a minority stockholder, and the butter in question remained in the possession of said corporation until sold by it to various. merchants in San Antonio, who paid the money to the corporation—all with the

knowledge and consent of appellee. Appellant assigned as error, requiring the case be reversed and remanded, the action of the court in striking from its pleading the allegations of fraud and misrepresentations in answers of appellee to questions contained in its application for such bond on special exception thereto.

■ We hold that the action of the court in striking from appellant's pleading averments of misrepresentations in appellee's application for the bond was not error. It is well settled that a bond like the one here is an insurance contract or policy, and statutes and rules of construction applying generally to insurance policies are likewise applicable to such bonds. American Surety Company v. Austin (Tex. Com.App.) 17 S.W.(2d) 777.

The case of First Texas Prudential. Insurance Company v. Pedigo (Tex.Com. App.) 50 S.W.(2d) 1091, 1092, does not have the effect ascribed to it by appellant. It does not purport to overrule Southwestern Surety Ins. Co. v. Hico Oil Mill (Tex. Com.App.) 229 S.W. 479, which case, in referring to article 5049, R.S. 1925, gave as authority for the following rule, stated in this language: "It has been held that this provision [i. e. that every policy of insurance contracted for in this State shall be accompanied by copy of the application for the policy, together with its questions and answers] has effect to deprive the application of all evidentiary value, with respect both to its contractual provisions and to fact representations contained therein unless the instrument, or a copy thereof, be attached to or accompany the policy."

The opinion goes on to say, referring to the Hico Mill Case among others: "In the cases cited, policies of insurance other than life policies were involved. Article 5049 does not apply to life policies issued after December 31, 1909. * * * Inasmuch as the policy in controversy here was issued after the last-mentioned date, it becomes necessary to look to other statutes which bear on the question under consideration."

The fidelity bond sued on by appellee, not being a life policy issued after December 31, 1909, comes within the Hico Mill Case.

■ The bond is in usual form, recites that Amos L. Butler, employee, had been appointed to a position in the service of appellee, and binds appellant to reimburse appellee, employer, for any loss not exceeding $2,500 of money, securities, or other personal property, which the employer sustains by reason of any fraud, dishonesty, forgery, embezzlement, wrongful abstraction, or willful misapplication on the part of the employee. We hold there is sufficient evidence to warrant the court in finding, as was necessarily done in order to have given judgment in favor of appellee, that appellee was the employer of Amos L. Butler, and he the employee of appellee. This evidence shows that appellee had been shipping its butter to San Antonio for sale prior to February 3, 1932. Amos L. Butler began selling appellee's butter in 1928 at a salary of $50 or $60 a week, which arrangement continued for about two years. In 1930, Butler wanted to take over appellee's San Antonio business, and this was agreed to —appellee then began to sell its butter to Butler, who resold it. This latter arrangement continued for about three years. During this period he incorporated his business as "Amos L. Butler, Inc.," and appellee changed its stencil with which it marked the butter it shipped to San Antonio to read "Amos L. Butler, Inc." This arrangement became unsatisfactory, and Butler was told appellee was not "going to mess with Amos L. Butler, Inc., any longer." It was then agreed appellee would ship butter to Butler and give him 4 cents a pound on the butter he sold and collected for, and no more business would be done between appellee and "Amos L. Butler, Inc."; Butler was to have $60 per week, and when his commissions of 4 cents per pound exceeded that sum the excess was to be applied to the indebtedness due appellee from Amos L. Butler, Inc. The butter was at all times to belong to appellee until it was sold, and when sold the price should·be by Butler deposited to appellee's account in the Frost National Bank in San Antonio. At the entreaty of Butler, appellee consented to continue to address shipments of butter—"Amos L. Butler, Inc."

Appellee, when making out its weekly pay roll, always made out its check to "Amos L. Butler" for $60. If the commissions earned by Butler did not total as much as $60 in any given week, the difference was charged back to him. Butler, however, always had his pay checks indorsed "Amos L. Butler, Inc.," and turned the proceeds thereof over to "Amos L. Butler, Inc.," and the proof showed

that he drew from Amos L. Butler, Inc., a weekly pay check of much less than $60 per week, and that another officer of "Amos L. Butler, Inc.," drew a weekly salary from "Amos L. Butler, Inc.," equal to that drawn by Amos L. Butler. The evidence, however, showed that Butler was president of "Amos L. Butler, Inc.," and dominated it; at least there is evidence from which the trial court could so infer. Butler sold appellee's butter through the organization of his corporation, which also engaged in selling other food products. This he had the right to do, not being in the exclusive employment of appellee. And merchants who bought appellee's butter would frequently buy other food products in which appellee had no interest and would make out lump sum checks to "Amos L. Butler, Inc.," in payment for both appellee's butter and such other food products purchased from "Amos L. Butler, Inc.," without discrimination. In practice, the secretary-treasurer of "Amos L. Butler, Inc.," deposited appellee's money, the proceeds of its butter, to appellee's credit in the Frost Bank, though by the agreement Butler was bound to do this personally. Such is appellee's evidence.

This arrangement continued until the last of July, 1932, when Butler defaulted in paying over to appellee its money. It may be, and doubtless was true, that "Amos L. Butler, Inc.," was in a failing condition at that time. It may be that appellee's money was applied to the payment of its debts. But against any possible loss by reason of the insolvency of Butler, or of Butler's alter ego, "Amos L. Butler, Inc.," appellee had carefully provided. Not by insuring its account with him or it, but by refusing to give him or it credit, by retaining title to its butter until sold, and making it one of the duties of Butler's service to deposit its money from such sales to its credit in the bank. Under this arrangement, and not without reason, appellee evidently believed that, if Butler performed his duties as its saleman, the only loss it could sustain through Butler, would be through some act on his part of fraud, dishonesty, embezzlement, wrongful abstraction, or willful misapplication. And against such loss it secured itself by the bond here sued on. If there was anything in appellee's application to appellant for the bond in question which would defeat appellee's recovery on the bond, it is not in evidence. The issue on the trial was whether appellee had sustained such a loss as appellant, by the terms of the bond, was bound to pay for. The evidence that it did so is only circumstantial, and not direct. In rendering judgment for appellee, the trial court evidently concluded that the corporation was so dominated by Butler that, even if the money were applied to its debts, that such application was in fact Butler's act. If the trial court believed the evidence submitted by appellant, and the legitimate conclusions favorable to appellant which might be drawn therefrom, it would have been his duty to have rendered judgment for appellant. Having rendered judgment for appellee, he evidently concluded from the evidence that the relationship of employer and employee existed between appellee and Butler, and that the loss of appellee was sustained by reason of acts on the part of Butler, while in performance of his duties as salesman in the service of appellee, against which the fidelity bond insured appellee.

Believing there is sufficient evidence to support the judgment, we think it should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

In its motion for a new trial, appellant contends that after the bond was executed, a new arrangement was made between appellee and Butler, and one not contemplated by the bond sued on. This conclusion is not supported by the evidence favorable to appellee. If there were any representations in appellee's application for the bond, from which appellant draws this conclusion, it should be remembered that the court's action, striking all such allegations from its pleadings, has excluded any such evidence, if there be such. Motion overruled.

Overruled.