George McCASLAND, Appellant,

v.

NATIONAL LLOYDS INSURANCE COMPANY, Appellee.

No. 5709.

Court of Civil Appeals of Texas, Waco.

June 2, 1977.

Rehearing Denied June 30, 1977.

J. C. Jacobs, Corsicana, for appellant.

Sherwin A. Winniford, Haley, Fulbright, Winniford, Bice & Davis, Waco, for appellee.

HALL, Justice.

Appellant George McCasland is the named mortgagee-payee in a Texas Standard Fire Policy issued by appellee National Lloyds Insurance Company insuring a house owned by J. Tobin Moore for $12,500.00. In June, 1975, when the policy was in force, the house was totally destroyed by fire. McCasland brought this suit against appellee for $11,481.29, the alleged amount of his interest in the property at the time of its destruction. Appellee defended under a provision of the policy providing that it "shall be void" in the event of willful misrepresentation or concealment or any fraud by the insured "concerning this insurance, or the subject thereof, or the interest of the insured therein"; and pleaded that Moore intentionally and grossly overvalued the property in his application for insurance, that McCasland was aware of this deceit, that appellee relied upon the misrepresentation of value, and that the fraud materially induced the issuance of the policy.

Trial was to a jury which answered all issues favorably to appellee, as follows:

(1) When Moore made application for the policy in question he represented to appellee's agent that the house had an actual cash value of $12,500.00;

(2) Moore intended for the agent to rely upon the representation;

(3) The representation was false;

(4) Moore knew it was false;

(5) The agent relied upon the representation and was thereby induced to submit the application to appellee;

(6) Appellee would not have written the policy "in the amount shown thereon" except for Moore's false representation;

(7) Moore grossly overvalued the actual cash value of the house in his application;

(8) He knew he was doing so;

(9) He intended for the agent to rely upon the gross overvaluation;

(10) The agent relied upon it and was thereby induced to submit the application to appellee;

(11) Appellee would not have written the policy "in the amount shown there-

on" except for Moore's gross over-valuation;

(12) McCasland "was aware that the value of the property would be falsely represented at the time the insurance would be applied for";

(13) McCasland intended that the false representation be relied upon by appellee's agent;

(14) McCasland was aware that the property "would be grossly overvalued at the time the insurance would be applied for";

(15) McCasland intended that the gross overvaluation be relied upon by appellee's agent; and

(16) Appellee made a reasonable effort to inspect the house before the fire.

Judgment was rendered on the verdict that McCasland take nothing. He appeals contending there is no evidence to support the jury's answers to issues 12, 13, 14 and 15 (which are based upon findings of misrepresentations by Moore). This contention is grounded on two theories: First, that because appellee failed to attach Moore's application to the policy as required by V.A.T.S. Insurance Code, Art. 21.35, evidence of Moore's misrepresentations was not admissible on the trial as a matter of law; and, secondly, that in any event the evidence adduced on the trial was not legally sufficient to support the questioned findings. We overrule the last contention, but affirm the first one and reverse the judgment.

■ In testing "no evidence" complaints, appellate courts may consider only the proof and its inferences which support the findings in dispute. When we do that here, we find evidence that the house in question was a frame house of box-type construction; that it was old and rundown; that it was located in a sparsely settled rural community and was virtually abandoned; that when Moore made application for the policy in question, both he and McCasland knew the actual cash value of the house was somewhere between $500.00 and $3,000.00; that Moore represented to appellee's agent that the value of the house was $12,500.00; that McCasland instructed

Moore to secure insurance on the house in the amount of at least $11,500.00; and that excepting the concrete blocks upon which it stood, the house was wholly consumed by the fire. This evidence supports the findings in question.

■ Article 21.35, V.A.T.S. Insurance Code, provides in pertinent part that "every contract or policy of insurance issued or contracted for in this State shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto." It is settled that noncompliance with this statutory provision prevents the insurer from using statements made by an insured in the policy application as evidence of misrepresentations and fraud to defeat coverage. *Johnson v. Prudential Insurance Co. of America*, 519 S.W.2d 111, 114 (Tex. Sup.1975).

The policy in question does not include a copy of Moore's application or statements made relating to the value of the house.

■ Our problem is that Article 21.35 was not argued by McCasland on the trial in support of his contentions, but was raised by him for the first time on appeal. Nevertheless, the cases hold that compliance with the statute is mandatory, that proof of compliance is a necessary predicate by an insurer if it would avoid its policy on the ground of fraud inducing the contract, and that noncompliance renders the allegedly fraudulent statements inadmissible. *Southwestern Surety Ins. Co. v. Hico Oil Mill*, 229 S.W. 479, 482 (Tex.Com.App.1921, judgment adopted); *American Surety Co. v. West State Bank*, 4 S.W.2d 312, 313 (Tex.Civ.App. Waco 1928, writ ref.); *American Indemnity Co. v. Baldwin Motor Co.*, 19 S.W.2d 848, 849 (Tex.Civ.App.Texarkana 1929, writ dism.). We therefore believe and hold that the lack of proof of compliance with the statute by appellee is germane to McCasland's "no evidence" points here, albeit not argued by him to the trial court, and is therefore properly before us. Accordingly, the points are sustained and the judgment

is reversed. Because the impact of the statute apparently was not contemplated by the parties or the court on the trial, we believe justice requires a remand of the case rather than rendition of judgment.

Reversed and remanded.